IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:25-cv-00715-FL

| | | |
|---|---|---|
| MEGAN NICOLE SELLERS,<br>Administratrix of the Estate of<br>NOBLE SELLERS,<br><br>Plaintiff,<br><br>v.<br><br>MILLENNIUM OUTDOORS, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Noble Sellers was 36 when a fall from a tree left him paralyzed from the neck down. He died 54 days later, leaving his wife, Megan, and their two young sons, Hunter and Levi. Millennium asks the Court to decide how the fall happened. The evidence would allow a jury to find that a defective climbing stick buckled under Sellers's weight and caused the fall.

On July 17, 2024, Sellers was installing new hunting equipment manufactured in China and sold by Millennium. D.E. 38-21 at 25. After two earlier installations that day, Sellers climbed the sticks on the third tree. D.E. 38-11 at 123:18. Edens heard a pop, looked up, and saw Sellers fall. *Id*. at 180:19-25. Edens's testimony and Dr. Jahan Rasty's engineering analysis together support an inference that the step buckled before Sellers fell. D.E. 38-11 at 51:23–52:9, 54:22–56:8, 59:17–60:25, 181:8–14, 226:9–12; D.E. 38-5 at 110:1–116:11. Megan Sellers brought this action to hold Millennium accountable for the

climbing stick's defects and resulting harm. Rule 56 requires the Court to view the evidence and draw reasonable inferences in Plaintiff's favor.

## II. THE GOVERNING FOURTH CIRCUIT SUMMARY JUDGMENT STANDARD

### A. The question is whether a reasonable jury could find for Plaintiff.

Federal Rule of Civil Procedure 56(a) permits summary judgment only if the movant shows that no genuine dispute of material fact exists and that it is entitled to judgment as a matter of law. A dispute is genuine when the evidence would permit a reasonable jury to return a verdict for the nonmovant; a fact is material when it could affect the outcome under governing law. *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The question is whether Plaintiff has sufficient admissible evidence for a jury, not whether Millennium's account appears more persuasive.

In *Jacobs*, an appeal from this District, the Fourth Circuit required the court to view the evidence and draw reasonable inferences in the nonmovant's favor. *Jacobs*, 780 F.3d at 568–70.

### B. Millennium bears the burden of establishing its affirmative defenses.

The parties' respective burdens matter. When Millennium challenges an element Plaintiff must prove at trial, it may identify an absence of supporting evidence. Plaintiff must then identify specific materials creating a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986). When Millennium seeks judgment on an affirmative defense it must conclusively establish every essential element. Only

after it makes that showing must Plaintiff produce specific contrary facts. *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 299–300 (4th Cir. 2012).

That rule matters here. Millennium cannot prove contributory negligence merely by pointing to unanswered questions. Not knowing exactly where Sellers placed his hands does not prove that he failed to maintain three points of contact. Nor does the absence of the safety equipment prove that he failed to use it. Plaintiff must support her claims, but she need not disprove speculation offered in support of Millennium's affirmative defenses.

### C. The Court cannot resolve credibility disputes or weigh competing accounts.

Credibility findings, weighing evidence, and choosing among legitimate factual inferences belong to the jury. *Anderson*, 477 U.S. at 255. The Court considers the whole record while drawing reasonable inferences for Plaintiff, rather than crediting the defense and disregarding contrary proof. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000). *Raynor v. Pugh* similarly holds that conflicting factual accounts requiring credibility determinations preclude summary judgment. 817 F.3d 123, 130 (4th Cir. 2016).

The Court need not accept speculation or inadmissible testimony. But it also cannot reject sworn eyewitness testimony merely because other evidence conflicts with it. Edens testified about Sellers's use of the belt and the pop he heard before the fall. D.E. 38-11 at 56:4. His earlier interview may be used to challenge his credibility, but the Court cannot decide which account is true at summary judgment. The interview recording was made a week after the accident and it does not show the fall itself.

### D. Dr. Rasty's engineering analysis satisfies Rule 702.

The Court independently evaluates the relevance and reliability of expert testimony under Rule 702. Plaintiff bears the burden of showing that the rule's requirements are met by a preponderance of the evidence. Fed. R. Evid. 702; *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281–84 (4th Cir. 2021). Dr. Rasty measured hardness near the failed connection, examined the metal's structure, and used published correlations to estimate material strength. He evaluated how the weakened connection would respond to loading through physical testing and finite element analysis. His deposition explains how reduced stiffness made buckling more likely and why the comparison-stick results differ from his analysis of the incident stick. D.E. 42-4 at 7–9, ¶¶ 16–22, 49, ¶ 100, 57, ¶ 116; D.E. 38-5 at 110:1–116:11, 143:2–144:23.

Plaintiff submits that Dr. Rasty reliably applied his methods to the facts of this case and asks the Court to admit his opinions, including the calculations supporting them. His testing, measurements, and analysis, considered with Edens's testimony, would permit a reasonable jury to find that the weakened connection buckled under load and caused Sellers to fall. Once the Court determines that the opinions satisfy Rule 702, the jury must decide which explanation for the fall to credit. *Anderson*, 477 U.S. at 255.

## III. NATURE OF THE CASE AND RELIEF REQUESTED

This wrongful death action concerns manufacturing and design defects in a new Millennium M-240 climbing stick. Plaintiff contends that the step buckled while Sellers climbed to install a Millennium M-150 treestand. Plaintiff alleges no defect in the harness or lineman's belt. Evidence about the use and performance of the fall protection

equipment responds to Millennium's contention that Sellers caused or could have prevented his fall.

Plaintiff also maintains her warning and warranty claims concerning the climbing stick. Those claims and Millennium's defenses must be evaluated under their separate elements and burdens of proof.

## IV. MATERIAL FACTS

Deposition citations use transcript page and line numbers. Report citations use printed pages and numbered paragraphs where available. Plaintiff's accompanying Local Civil Rule 56.1 statement responds to Millennium's 355 numbered paragraphs and identifies additional material facts. Plaintiff's Appendix Exhibits A and B are Rick Brenner's initial report and Dr. Rasty's rebuttal report, respectively. Previously filed materials are cited by docket entry.

### A. The physical defect and the engineering evidence.

Edens described unpacking the equipment and Sellers's ascent on the sticks on the incident tree. D.E. 38-11 at 54:22. Edens described Sellers loading a step with his left foot, a pop, and Sellers inverting and falling. *Id.* at 226:9–12. He also testified that he looked up when he heard the pop. *Id.* at 181:8–14. His observations bear on the sequence of the fall. Dr. Rasty's engineering analysis explains how the step could have buckled first.

Dr. Jahan Rasty examined the damaged climbing stick and comparison units. His work included laboratory tests of the metal, microscopic examination, load testing, and computer modeling. *See* D.E. 42-4. He found an unusually soft area where the subject step connected to the tube. *Id.* at 7, ¶ 16. Hardness measurements in that area were

approximately 95.7 HV, compared with approximately 143 HV in the comparison material, with some readings as low as 85.3 HV. *Id.* These are physical measurements, not simply an inference that the product was defective because it broke.

Dr. Rasty also found changes in the metal's structure consistent with overheating during the welding process. *Id.* at 8, ¶ 17. He distinguished the hardness values he measured from strength values he estimated using published correlations. *Id.* ¶¶ 18–19. In his opinion, the weakened metal could not support the step as intended and allowed it to buckle. *Id.* at 57, ¶ 116. His analysis considered a combined load of 195 pounds and a higher peak-load scenario of 278.9 pounds.[1] *Id.* at 49, ¶ 100. During his deposition, he explained that the supporting tube gave way and that its reduced stiffness made buckling more likely. D.E. 38-5 at 110:1–116:11, 132:10–133:25.

Millennium contends that the step bent when Sellers fell, rather than before. Dr. Rasty specifically addressed that theory in his rebuttal report. Pl.'s App. Ex. B at 2, ¶ 1. He observed that the subject step bent inward, toward the tree, while Saunders's dynamically tested comparison step bent in the opposite direction. *Id.* at 9, ¶ 16. Dr. Rasty also performed angled-load testing that produced inward bending. *Id.* at 14, ¶ 22; *see* figs. 3–7 at 10–13. This evidence supports Plaintiff's account of the fall sequence, although the jury must ultimately decide which explanation to accept.

[1] The elevated loading condition of approximately 278.9 lbs. is consistent with lower extremity forces reported in biomechanical studies of ladder climbing. These values represent the average of peak forces observed over repeated climbing cycles and demonstrate that the lower extremities are responsible for generating forces on the order of, and in some cases exceeding, the user's body weight during upward movement. These findings are consistent with the mechanics of climbing, in which the users must elevate their body mass through a step-up motion, resulting in localized loading applied at the step interface. *See* D.E. 42-4 at ¶ 79.

### B. The evidence concerning attachment to the tree.

Edens specifically testified that Sellers used the lineman's belt on the incident tree and that he specifically saw it around the tree. D.E. 38-11 at 59:1–5. He described the belt as failing to catch and as having become disconnected during the fall. *Id.* at 60:22–62:15. Edens then described collecting the cut harness and other equipment and placing them in Sellers's truck after the fall after Sellers was rushed to a nearby helicopter. *Id.* at 73:7–18.

The Court also has contrary evidence. North Carolina Wildlife Officers described statements Edens made during an interview a week after the incident, including statements that Sellers had not reached the point of hooking up. D.E. 38-17 at 42:7–44:2; D.E. 38-18 at 69:12–76:12. However, the Wildlife Officers also admitted on cross that their investigation revealed that Sellers "did not commit any violations" and that belt/equipment use was not conclusively established according to the investigative reports. D.E. 38-17 at 66; *see also* D.E. 38-17 at 62.

First responders did not remember seeing all the equipment after the fall, but they also acknowledged that they were not looking for it. *See, e.g.,* D.E. 38-14 at 66:1–15. That testimony does not conclusively disprove Edens's account. The conflicting evidence must be considered in Plaintiff's favor at this stage.

Whitty and Denis reviewed the Stacy recording, including the discussion around 15:24. D.E. 35-3 at 46. They acknowledged Edens's earlier statement that the SafeLink had not yet been installed, but distinguished the SafeLink from the harness and lineman's belt. *Id.* They explained why a person could reach the ground despite using a lineman's belt. *Id.* at 51. Because the equipment is now unavailable, they did not claim

to know exactly how it failed to arrest the fall. *Id.* at 47, ¶ 2. Whitty and Denis's role in this case is limited. They are offered only to rebut Millennium's opinions concerning Sellers' alleged absolute inability to impact the ground while using the provided equipment.

### C. Millennium's instructions and manufacturing oversight.

The manuals contain warnings against climbing with a treestand on one's back and require attachment to the tree. Plaintiff acknowledges those texts. Plaintiff, however, disputes the adequacy and application of the instructions as a whole and Millennium's account of Sellers' compliance and causation. D.E. 35-3 at 7–41; *see also* D.E. 35-3 at 44-52.

Bill Vigilante is offered solely in rebuttal to Millennium's expert opinions, including Smith's opinions concerning the supplied backpack straps, instability, and warnings. D.E. 35-3 at 2-3. Vigilante's opinions are not offered to establish an affirmative defect or failure to warn element. *Id.* Vigilante identifies the written prohibition but explains why the alleged imbalance hazard was inadequately communicated in light of the product's features and competing installation tasks. *Id.* at 40-41. Whitty and Denis identify specific instructions placing the tree belt/tether connection after ascent while describing the lineman's belt as the attachment during the installation process. *Id.* at 49-50.

Millennium relies on raw material certificates, manufacturing fixtures, visual inspection, and certification testing. D.E. 38 at 18. Its corporate witness, Edwin Welsh, distinguished testing incoming steel from testing the finished product. Welsh was unsure whether hardness testing occurred after production and could not recall how often

destructive testing occurred. D.E. 38-21 at 90:19–93:15. That distinction matters because Dr. Rasty attributes the localized weakening to heat introduced during welding. D.E. 42-4 at 58, ¶¶ 119–22.

## V. ARGUMENT

### 1. The record evidence identifies a specific manufacturing defect and causal connection to Noble's fall.

North Carolina recognizes product liability based on negligence and warranty. A negligent manufacture theory requires a defect existing when the product left the defendant's control, negligence producing the defect, and resulting injury. *Red Hill Hosiery Mill, Inc. v. MagneTek, Inc.*, 138 N.C. App. 70, 75, 530 S.E.2d 321, 326 (2000). *Red Hill* distinguishes direct evidence of an actual defect from a defect inferred solely from malfunction; it does not permit negligence to be inferred merely by stacking one malfunction-based inference on another. *Id.* at 75–77, 530 S.E.2d at 326–27. *Red Hill* affirmed summary judgment on negligence while reversing on implied warranty because the record supported an inference of defect but lacked evidence of negligent manufacture, design, assembly, or inspection. *Id.* at 76–77, 530 S.E.2d at 327. It also recognizes that negligence may be inferred from direct evidence of an actual defect, as distinguished from a defect inferred solely from malfunction. *Id.* at 75, 530 S.E.2d at 326.

Unlike a case based only on a product's failure, this case includes substantial engineering evidence of a specific physical defect. Dr. Rasty measured an unusually soft area of metal, observed changes consistent with welding heat, and explained how that weakness could cause the nearby step to buckle. D.E. 42-4 at 7–9; D.E. 38-5 at 114:1–116:11, 133:1–25. He also identified problems with weld placement and penetration. *Id.*

The equipment was new, and there is no identified intervening welding. A jury therefore could find that the defect existed when the climbing stick entered the market.

Millennium points to tests in which comparison sticks did not permanently deform under loads of approximately 279 pounds. D.E. 38-5 at 21:18–22:15. But those tests used other sticks, not the one that failed. Dr. Rasty distinguished the subject unit from the baseline model. *Id*. at 143:2–144:23. A sound comparison stick may withstand a load that a stick weakened during manufacturing cannot. That difference is central to Plaintiff's manufacturing defect claim.

> Q: "While the FEA results demonstrate that loading conditions consistent with normal use are capable of producing the observed failure mode, the load levels associated with deformation in both physical testing and baseline FEA analysis exceed the body weight of the user involved in the subject incident. Is that true?"
>
> **A: "In a perfectly manufactured and perfectly -- perfect material, for that it's true. But it's not true in our case. It's not true on Sellers' tree stand."**

*Id*. at 144:12–23.

Read in context, this answer concerns tests of comparison products and a baseline model. D.E. 38-5 at 143:12–17, 144:12–23.

The direction of the bend also matters. Dr. Rasty reported that the subject step bent inward toward the tree, while Saunders's pull test step bent outward. Pl.'s App. Ex. B ¶¶ 14–20, figs. 3–7. This does not rule out every possible contact during the fall. But it provides physical evidence supporting Plaintiff's position that the step failed first, rather than bending because Sellers fell. Together with Edens's testimony, it creates a substantial genuine dispute over causation.

Dr. Rasty's measurements, testing, and calculations explain how the localized weakness affected the incident stick under load. Plaintiff relies on that engineering analysis together with the physical evidence and Edens's personal observations. Millennium's competing account presents a dispute over the sequence of the fall that a jury can resolve on this evidence. D.E. 42-4 ¶¶ 16–22, 101–09, 116; D.E. 38-5 at 110:1–116:11, 143:2–144:23; Pl.'s App. Ex. B ¶¶ 14–24, figs. 3–7.

Millennium's design role is material to its claim that it acted only as a seller. Chapter 99B includes an entity that designs a product within its definition of manufacturer. N.C. Gen. Stat. § 99B-1(2). Millennium's corporate witness testified that Mr. Alexander designed the climbing stick with help from an engineer in China. D.E. 38-21 at 74:4–14. That testimony supports treating Millennium as a manufacturer under the statute even though the stick was fabricated overseas.

Section 99B-2(a) protects qualifying sellers in sealed container and limited inspection circumstances, subject to the statute's express warranty carveout and other exceptions. Its protections do not apply if the manufacturer is outside the jurisdiction of North Carolina's courts. N.C. Gen. Stat. § 99B-2(a). Millennium's own design role is supported by its corporate testimony and must be addressed in determining whether the seller protection applies.

**2. The climbing stick design claim requires its own analysis.**

The design claim concerns the climbing stick's structural specifications and load-bearing step-to-tube connection. Dr. Rasty separately addressed what Millennium's drawings specified and what they omitted. He identified a specified circumferential weld and found that the incident unit departed from that configuration. He also identified

omissions concerning fillet-weld size, required mechanical properties, and post-weld material criteria. D.E. 42-4 at 28–33, ¶¶ 65–73. The departure from the specified weld supports the manufacturing theory. The omissions bear on the separate question whether the design itself was adequate.

A jury could evaluate the adequacy of the drawings by considering the role of the step-to-tube connection, the consequences of weakening that connection during welding, and the specifications Dr. Rasty identified. D.E. 42-4 at 28–33, ¶¶ 65–73.

Section 99B-6(a) requires unreasonable design and proximate causation, together with either the qualifying safer alternative design showing in subsection (a)(1) or the extreme unreasonableness showing in subsection (a)(2). N.C. Gen. Stat. § 99B-6(a). Plaintiff does not contend that a manufacturing deviation automatically satisfies those additional requirements. The design evidence must address the available structural specifications, the consequences of leaving critical performance criteria undefined, and the statutory basis for finding the design actionable.

Under subsection (a)(1), the alternative design must have been safer, practical, feasible, and otherwise reasonable. It must have been reasonably available when the product left the manufacturer's control and capable of preventing or substantially reducing the risk without substantially impairing the product's usefulness, practicality, or desirability. Under subsection (a)(2), the evidence must permit a finding that the design was so unreasonable that a reasonable person aware of the relevant facts would decline to use it. N.C. Gen. Stat. § 99B-6(a)(1)–(2). Dr. Rasty's criticism of the weld specifications and post-weld material criteria bears on these questions. D.E. 42-4 at 28–33, ¶¶ 65–73.

Millennium's experience and testing do not eliminate those disputes. The drawings, the condition of the actual stick, and the tests of other units are different evidence. D.E. 42-4 at 5–6, ¶¶ 7–10; D.E. 38-21 at 74:4–14. The Court should evaluate the design claim under section 99B-6 without allowing a ruling on design to dispose of the separate manufacturing defect claim.

**3. Millennium has not conclusively established its statutory defenses.**

Section 99B-4 supplies independent defenses. Plaintiff does not argue that Millennium must satisfy all three subsections. Subsection (1), however, requires use giving rise to the action that was contrary to express and adequate instructions or warnings supplied in a manner specified by the statute, and the user's actual or constructive knowledge of them; subsection (3) requires unreasonable conduct that proximately caused the occurrence. N.C. Gen. Stat. § 99B-4(1), (3). Each defense must be established on this record without resolving material factual disputes for Millennium.

In *Nicholson v. Am. Safety Util. Corp.*, the North Carolina Supreme Court applied the common law contributory negligence standard, considered the circumstances surrounding product use, and nevertheless held summary judgment improper where competing evidence disputed the reasonableness of the plaintiff's conduct. 346 N.C. 767, 774–75, 488 S.E.2d 240, 244–45 (1997). Plaintiff relies on that disposition, not on the narrower interpretation of product use rejected by the North Carolina Supreme Court. Here too, the defense must overcome affirmative contrary evidence.

#### 4. Ordinary care and foreseeability must be assessed before the failure rather than in hindsight.

Millennium bears the burden of proving both want of due care and the required causal connection. *Shelton v. Steelcase, Inc.*, 197 N.C. App. 404, 424, 677 S.E.2d 485, 499 (2009). *Shelton* explains that the plaintiff is not required to shape conduct around circumstances of which he is justifiably ignorant; the danger must be one he actually knew or, exercising ordinary care, should have appreciated. *Id.* The Court there upheld refusal to submit contributory negligence where the defense rested merely on conjecture. *Id.* While its procedural posture differs, its insistence on evidence of unreasonable conduct applies here.

The relevant question is what Sellers reasonably could have known before the accident. Edens testified that the equipment was new and that Sellers had completed two identical installations that day without incident. D.E. 38-11 at 51:23–52:9, 54:22–55:13, 135:8–16. Dr. Rasty later identified a hidden weakness that required laboratory testing to detect. D.E. 42-4 ¶¶ 16–22. A jury could find that an ordinary user would not expect a new step to buckle while climbing. Whether Sellers nevertheless failed to take reasonable precautions is a separate, disputed question for the jury.

Plaintiff does not contend that Millennium must prove Sellers anticipated the precise metallurgical mechanism. *Smith v. Fiber Controls Corp.*, 300 N.C. 669, 672–74, 268 S.E.2d 504, 506–08 (1980), applies an objective standard and does not require subjective appreciation of the exact danger. Nor do prior successful uses excuse an independently established failure to use required protection against a generally foreseeable fall. The proper inquiry is whether the particular conduct charged to Sellers was unreasonable under the circumstances and causally connected to his injury. Here,

the hidden defect evidence, multiple prior successful installations, and affirmative belt use testimony preclude the defense's automatic hindsight inference. Edens described the equipment's new condition:

> Q: But it's your recollection they were all in the box at that day?
> **A: They were all brand new, every one of them.**

D.E. 38-11 at 135:8–10.

That testimony supports Plaintiff's position that Sellers had no warning of the hidden weakness. It does not excuse any independently proven failure to take reasonable fall precautions. Here, the evidence viewed in Plaintiff's favor supports attachment and belt use, and defeats the assertions that Sellers was independently negligent.

**5. The controlling cases require a jury when reasonable competing inferences remain.**

*Nicholson*'s products liability holding is reinforced by *Lamm v. Bissette Realty, Inc.*, 327 N.C. 412, 418, 395 S.E.2d 112, 116 (1990). *Lamm* held that whether a fall resulted from the defendant's negligence or the plaintiff's own negligence presented a jury question on the evidence. The plaintiff's uncertainty concerning the precise cause did not authorize the court to resolve the competing account as a matter of law. *Id.* These authorities do not establish an exemption from Rule 56 – they explain why reasonable care and causal disputes commonly require a jury trial.

The Fourth Circuit recently applied North Carolina law to another fatal accident in *Kritter v. Mooring*, 142 F.4th 267, 277 (4th Cir. 2025) (on rehearing). The court agreed with the District Court that contributory negligence could not be resolved as a matter of law because prior testimony and expert reconstruction created factual disputes concerning whether the decedent could detect the danger in time. Although it vacated

summary judgment entered on other grounds, the Fourth Circuit agreed with the District Court's rejection of contributory negligence as a basis for summary judgment. *Id.* The Court recognized that a jury could ultimately find contributory negligence but treated that conclusion as a factual determination. *Id.* The analogy is the need to evaluate concrete contrary evidence about what danger the decedent reasonably could perceive, rather than infer negligence solely from the occurrence of a fatal accident.

**6. Whether Sellers used fall protection is disputed.**

Millennium's categorical assertion that Sellers was unattached directly conflicts with Edens's sworn testimony about the lineman's belt being around the tree. D.E. 38-11 at 59:1–5, 60:22 and 62:15. The pertinent exchange spans the page break:

> Q: "Did -- on this third tree we're talking about right now, did he use the lineman's belt?"
> A: "Yes."
> **Q: "All right, so you remember seeing that around the tree?"**
> **A: "Yes, sir."**

*Id*. at 58:25–59:5.

The first responders' inability to recall the equipment does not disprove Edens's account of removing it. They testified that they either did not remember seeing the equipment or had not looked for it. *See* D.E. 38-15 at 45:20–46:4; D.E. 38-14 at 66:1–17.

Edens's testimony distinguishes the SafeLink from the lineman's belt. The recording captures an interview one week after the incident. Plaintiff objects under Rule 56(c)(2) to substantive use of the unsworn statements unless Millennium shows they can be presented in admissible form for their truth. The interview was unsworn, so Rule 801(d)(1)(A) does not supply that basis. Edens's status as an eyewitness also does not make his statement an opposing party statement. Any use of extrinsic evidence for

impeachment is subject to Rule 613(b). If the Court permits a limited use, Plaintiff requests that it confine the evidence to that purpose. Fed. R. Evid. 105, 613(b), 801(d)(1)(A), (d)(2). Even if the statements are considered substantively, the conflict with Edens's sworn testimony presents a credibility question for the jury.

The officers' deposition testimony also does not cure the underlying hearsay merely because the officers later testified under oath. To the extent that an officer only repeats what Edens said, the officer has personal knowledge of the interview, *not* of the disputed attachment at the time of Sellers' fall. If an investigative report is offered, Rule 803(8) requires separate attention. Factual findings from a legally authorized civil investigation may be admissible, including appropriately supported evaluative findings. Plaintiff therefore does not contend that every law enforcement report is excluded. But merely preserving an outside witness's assertion in a report or recording does not automatically transform that assertion into an admissible finding. Each hearsay layer requires its own basis for admission under Rule 805. An expert's reliance on the interview under Rule 703 does not itself make the interview admissible for its truth.

The one week interval also distinguishes these interviews from an immediate present sense impression under Rule 803(1). An excited utterance theory under Rule 803(2) requires evidence of continuing stress from the startling event, not merely proof that the underlying accident was traumatic. Plaintiff requests an express ruling on the offered statement, its purpose, and the foundation claimed. If admitted solely to impeach Edens, the statement cannot be used as affirmative proof that Sellers was unattached at the time he fell.

Millennium argues that Sellers must have been unattached because he reached the ground. Whitty and Denis dispute that conclusion. They explain that the testing does not establish that every belt configuration would necessarily stop this fall. D.E. 35-3 at 47, 51–52. They do not claim to know the precise mechanism. Edens supplies the direct testimony that Sellers used the belt; their rebuttal addresses Millennium's claim that his account is physically impossible. Plaintiff does not offer their opinions to prove a separate product defect in the belt.

Millennium says Whitty and Denis ignored the wildlife interview. D.E. 38 at 15 n. 2. Their report lists and discusses the Stacy recording, expressly addressing the account that the SafeLink had not yet been installed. D.E. 35-3 at 45–46, lines 64, 130–36. That evidence must be evaluated on its terms, including its limits, in Plaintiff's favor.

**7. Carrying the stand does not establish every element of Millennium's affirmative defense.**

Plaintiff admits that Sellers carried the tree stand with the provided backpack straps. The disputed questions include the adequacy of the warning in that context and the asserted causal connection to the fall. Bill Vigilante expressly acknowledges the prohibition and responds to Smith's imbalance theory by examining the supplied backpack straps, the consequences actually communicated to consumers, and the installation tasks. D.E. 35-3 at 30–34. Plaintiff does not contend that foreseeability alone excuses disregard of an adequate warning, or that being below the rated capacity defeats subsection (1). The point is that the statute requires <u>adequacy</u> and Plaintiff has offered a specific expert challenge to it.

Millennium argues that Dr. Rasty's inclusion of the stand's weight establishes that carrying it caused the step to fail. D.E. 38 at 12. The combined load in Dr. Rasty's analysis

does not establish that the stand's weight was necessary to buckle the weakened connection. His analysis of the localized weakness and the inward bend supports Plaintiff's account of how the step failed. D.E. 42-4 ¶¶ 16–22, 100–09; Pl.'s App. Ex. B ¶¶ 14–24.

Weight and balance are separate issues. The fact that the stand added weight does not prove Sellers lost his balance *before* the step failed. And proof of a defective step would not excuse any independently proven negligence that contributed to the injury. At this stage, the disputed fall sequence and the role, if any, of the stand must be decided on the evidence, not assumptions, in favor of Plaintiff.

**8. The other alleged violations depend on a disputed reconstruction.**

Millennium also claims that Sellers failed to maintain three points of contact. But no witness identified exactly where his hands were immediately before the fall. Dr. Rasty acknowledged that he did not know their positions. D.E. 38-5 at 85:16, 87:12. That uncertainty does not prove a violation. A fall following the failure of a step likewise does not establish how many points of contact Sellers maintained before the failure.

The required height relationship concerns the climbing aid and the treestand platform. Millennium relies on photographs of a receiver bracket and an account of reaching or mounting the stand. D.E. 38 at 16–17. Edens, however, described the fall during ascent after Sellers's foot loaded the step. D.E. 38-11 at 55:22–56:8, 59:17–60:25. The Court cannot treat an alleged (and factually disputed) final installation violation and its causal role as established without reconciling that record evidence.

*Saulsby v. Amphastar Pharms., Inc.*, 299 N.C. App. 703, 707, 919 S.E.2d 727, 730–31 (2025), holds that a single subsection of § 99B-4 may bar recovery. The warnings there

directly addressed the decedent's known medical conditions. *Id.* at 708–09, 919 S.E.2d at 731–32. *Saulsby* distinguished *Smith v. Selco Prods., Inc.*, 96 N.C. App. 151, 156–57, 385 S.E.2d 173, 175–76 (1989), where an express warning existed but evidence of a hazard it did not address precluded summary judgment. Here, the content and adequacy of the instructions, Sellers's use of the lineman's belt, and the sequence of the fall remain material to Millennium's defenses.

**9. The breach of warranty claims must be analyzed independently of negligence claims.**

An implied merchantability theory concerns fitness for ordinary use, rather than proof of a particular negligent act. N.C. Gen. Stat. § 25-2-314(2)(c). *DeWitt v. Eveready Battery Co.* permits a manufacturing defect to be established circumstantially in an implied warranty action, considering the product's history, malfunction, expert evidence, and reasonable alternative causes. 355 N.C. 672, 683–90, 565 S.E.2d 140, 147–51 (2002). It does not convert malfunction into automatic proof of negligence. The merchantability question is whether the particular product was fit for the ordinary purposes for which climbing sticks are used when it entered the stream of commerce. Evidence of a localized metal weakness in the load-bearing connection bears directly on that issue independent of proof identifying the individual welder or a specific negligent inspection.

Plaintiff's evidence includes a newly unpackaged product, the loading-and-pop sequence, the deformed step, and laboratory evidence of localized metallurgical weakness. That evidence supports an independent merchantability analysis under the Second Claim for Relief, including Complaint paragraphs 41–49. Defenses remain available, but the Court should not dispose of merchantability by rejecting proof of reliance necessary to a different warranty theory. Independent analysis of

merchantability does not eliminate the defenses applicable under Chapter 99B, including contributory negligence. N.C. Gen. Stat. § 99B-1.2; *Nicholson*, 346 N.C. at 773, 488 S.E.2d at 244.

An express warranty requires a qualifying affirmation of fact, promise, description, sample, or model that became part of the basis of the bargain. N.C. Gen. Stat. § 25-2-313(1). The Court should evaluate any asserted express warranty separately from merchantability, which turns on the product's fitness for ordinary use and the evidence of breach and causation.

**10. The rebuttal opinions should be evaluated by their actual purpose.**

Rule 26(a)(2)(D)(ii) recognizes opinions intended to contradict or rebut another party's expert evidence on the same subject. Dr. Rasty's June report supplies his affirmative climbing stick analysis, including the manufacturing defect and the design documentation criticisms. *See* D.E. 42-4. His August rebuttal report compares Millennium's test results and responds to its opposite causal sequence. *See* Pl.'s App. Ex. B. Whitty and Denis answer Saunders, Smith, and Crawford on equipment nonuse and unavoidable ground impact prevention. *See* D.E. 35-3 at 44-52. Vigilante is offered solely to rebut the defense experts' warning adequacy, misuse, and backpack-related expert opinions. *See* D.E. 35-3 at 7-41. Plaintiff does not rely on Vigilante to establish either the climbing stick defect claims or any affirmative failure to warn claim. D.E. 35-3 at 2-3.

*Deque Sys. Inc. v. BrowserStack, Inc.*, 177 F.4th 585, 595 (4th Cir. 2026), affirmed exclusion of affirmative damages evidence belatedly offered under a rebuttal label. Plaintiff accepts that a label cannot cure failure to disclose an essential affirmative opinion. But timely responding to Millennium's absolute causation and affirmative

defense opinions presents a different use. The Court should identify the challenged opinion and its function rather than exclude entire reports because they bear on facts also relevant to liability. If a disclosure violation is found, Plaintiff bears the burden of establishing substantial justification or harmlessness under Rule 37(c)(1). *Id.* at 595.

If the Court finds a discrete opinion outside permissible rebuttal, it should address Rule 37(c)(1) and the factors in *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003): surprise, ability to cure, disruption, importance, and explanation. Plaintiff requests an opportunity to address any identified defect through a narrowly tailored cure, including a limited deposition or response if the scheduling record warrants it, instead of excluding otherwise proper rebuttal or granting final judgment on unrelated claims. Plaintiff recognizes that *Southern States* affirmed exclusion and requires no finding of bad faith. The requested cure is discretionary, and Plaintiff does not assert that importance alone excuses nondisclosure or that a cure is harmless without examining the actual schedule.

**11. The fall protection and instruction evidence rebuts Millennium's defenses.**

Edens's testimony and the rebuttal opinions address whether Sellers used fall protection equipment and whether that equipment would necessarily have arrested this fall. Plaintiff alleges a defect in the climbing stick. Edens's testimony about the belt failing to catch concerns how the fall unfolded and responds to Millennium's nonuse defense. D.E. 38-11 at 58:25–59:5, 60:22–62:15; D.E. 35-3 at 47, 51–52.

Likewise, the adequacy and application of the instructions matter because Millennium invokes section 99B-4(1). Vigilante's and Whitty-Denis's opinions and analysis should be evaluated for that defensive purpose. Evidence that Sellers read

instructions and watched a video does not conclusively establish adequacy, compliance, or the defense's disputed causal fall sequence. Plaintiff does not use that evidence here to advance a separate harness or belt defect claim. Plaintiff offers Vigilante only to rebut defense expert assertions on the same subject and does not seek to use his rebuttal designation to supply an element of her affirmative case. The climbing stick design and manufacturing claims remain subject to their own proof requirements.

**12. Plaintiff maintains her failure to warn claim independently of Vigilante's rebuttal opinions.**

Plaintiff expressly opposes summary judgment on her pleaded failure to warn claim concerning the climbing stick. Her decision to offer Vigilante solely in rebuttal is a limitation on the use of that witness, not a concession that the instructions were adequate or an abandonment of that claim. Plaintiff does not allege a defective harness or lineman's belt. Her instruction claims and her response to Millennium's statutory defenses must be considered separately, including their different burdens of proof.

Section 99B-5(a) requires unreasonable failure to provide an adequate warning or instruction, proximate causation, and proof of the applicable statutory knowledge and risk predicate. For a warning required when the product left Millennium’s control, the question is whether, without adequate instructions, the product created an unreasonably dangerous condition that Millennium knew or in the exercise of ordinary care should have known posed a substantial risk to a reasonably foreseeable claimant. N.C. Gen. Stat. § 99B-5(a)(1). The Court may consider the manuals, deposition testimony, and admissions under Rule 56.

The manuals contain instructions on the lineman’s belt and the transition to the tree tether at height. D.E. 38-3, 38-4; D.E. 38-6 at 10–11. Edens testified that he and

Sellers consulted instructions and video while installing the equipment. D.E. 38-11 at 58:23–24. Their use of those materials bears on whether clearer instructions about the transition and the means of staying attached during installation would have changed Sellers's conduct.

The warning claim turns on whether the evidence permits a jury to identify an inadequate instruction, find the statutory knowledge and risk predicate, and infer that an adequate instruction would have changed Sellers's conduct and prevented the injury. The Court should evaluate the manuals and the testimony concerning the installation and fall under those elements. D.E. 38-6 at 10–11; D.E. 38-11 at 58:23–59:16, 60:22–62:15.

Vigilante remains a rebuttal witness only. He responds to Millennium's experts on warnings, misuse, and causation, including the claim that carrying the stand created an imbalance. Plaintiff does not offer his rebuttal opinions to prove an element of her affirmative failure to warn claim.

**13. Aggravated liability and Chapter 75 require separate findings.**

Millennium cites certification and written quality procedures. Welsh's testimony about finished product testing, Dr. Rasty's examination of the weld area, and Brenner's review of the quality records bear on how Millennium implemented those procedures. D.E. 38-21 at 90:19–93:15; D.E. 42-4 at 6–8; Pl.'s App. Ex. A at 38–48.

Punitive damages require liability for compensatory damages and clear and convincing proof of a qualifying aggravating factor related to the injury. For corporate liability, an officer, director, or manager must have participated in or condoned the conduct constituting that factor. N.C. Gen. Stat. §§ 1D-5(7), 1D-15(a)–(c). The Chapter

75 claim separately requires an unfair or deceptive act in or affecting commerce that proximately caused injury. N.C. Gen. Stat. § 75-1.1. If the theory rests on a misrepresentation, proximate causation requires actual and reasonable reliance. *Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 88–90, 747 S.E.2d 220, 226–27 (2013). The Court should apply each standard to the evidence supporting the corresponding claim or remedy.

## VI. CONCLUSION

Plaintiff respectfully requests that the Court deny Millennium's Motion for Summary Judgment. The evidence supports a finding that a defect in the new climbing stick caused it to suddenly fail before Sellers fell. Millennium disputes that account, but those disputes belong to the jury. The evidence concerning fall protection equipment and warnings also prevents Millennium from establishing its defenses as a matter of law. Plaintiff maintains her distinct manufacturing defect, design defect, warranty, and failure to warn claims, while offering Vigilante solely in rebuttal. Plaintiff requests oral argument if it would assist the Court.

Respectfully submitted this 10th day of November, 2026.

MUSSELWHITE, MUSSELWHITE, BRANCH & GRANTHAM, P.A.

***/s/ J. William Owen***

J. WILLIAM OWEN
NC Bar No. 47994
606 N. Elm Street
Lumberton, North Carolina 28358
Telephone: (910) 738-5277
Fax: (910) 738-3678
wowen@mmbglaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF WORD COUNT

Pursuant to Local Civil Rule 7.2(f)(3)(A), undersigned counsel certifies that this memorandum complies with the applicable word limit. This memorandum contains 6,664 words, including headings, footnotes, citations, and quotations and excluding the items specified in Local Civil Rule 7.2(f)(1).

***/s/ J. William Owen***